1   SIMON ARON (State Bar No. 108183)
        saron@wrslawyers.com
2   JOHNNY WHITE (State Bar No. 269306)
        jwhite@wrslawyers.com
3   WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
    11400 West Olympic Boulevard, 9th Floor
4   Los Angeles, California 90064-1582
    Telephone:   (310) 478-4100
5   Facsimile:   (310) 479-1422

6   Proposed Attorneys for Debtor, EcoSmart,
    Inc. dba EcoSmart Fire dba Brown Jordan
7   Fires

8                    UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                       LOS ANGELES DIVISION

11  | In re | Case No. 2:15-bk-27139-RK |
    |---|---|
12  | EcoSmart, Inc., | Chapter 11 |
13  | Debtor. | **SUPPLEMENT TO MOTION FOR AN ORDER AUTHORIZING THE DEBTOR TO PAY PRE-PETITION WAGES, EMPLOYEE DEDUCTIONS, AND RELATED RELIEF; DECLARATIONS OF ALEXANDER EBURNE, PAU TORRUELLA, AND KATHLEEN LAM IN SUPPORT THEREOF** |

**Judge:  Hon. Robert N. Kwan**

Date:   November 17, 2015
Time:   1:30 p.m.
Crtrm:  1675
        255 E. Temple Street,
        Los Angeles, CA 90012

1                               **<u>SUPPLEMENT</u>**

2         The Debtor[1] hereby files this *Supplement to Motion for Order Authorizing the*

3 *Debtor to Pay Prepetition Wages, Employee Deductions, and Related Relief*, and

4 respectively represents as follows:

5        A.      **<u>Payment of Pre-Petition Payroll Obligations to All "Individuals" Should</u>**

6                  **<u>Be Authorized Under the Plain Language of 11 U.S.C. § 507(a)(4)(A)</u>**

7                  **<u>and Applicable Case Authority</u>**

8         As originally enacted in 1978, former Section 507(a)(3) of the Bankruptcy Code,

9 now Section 507(a)(4) gave priority to the following class of claimants:

10                 (3) Third, allowed unsecured claims for wages, salaries, or
commissions, including vacation, severance and sick leave
11                 pay—,

12                 (A) earned by an individual within 90 days before the date of
the filing of the petition or the date of the cessation of the
13                 debtor's business, whichever occurs first; but only

14                 (B) to the extent of $2,000 for each such individual.

15         *See* Bankruptcy Reform Act of 1978, Pub. L. No. 95–598 (HR 8200), Pub. L. No.

16 95–598, 92 Stat 2549.

17         As the Court noted at the hearing on November 12, 2015, it was amended in 1994,

18 and the relevant provision now states:

19                 (4) Fourth, allowed unsecured claims, but only to the extent of
$12,475 for each individual or corporation, as the case may be,
20                 earned within 180 days before the date of the filing of the
petition or the date of the cessation of the debtor's business,
21                 whichever occurs first, for--

22                 (A) wages, salaries, or commissions, including vacation,
severance, and sick leave pay earned by an individual; or
23
                (B) sales commissions earned by an individual or by a
24                 corporation with only 1 employee, acting as an independent
contractor in the sale of goods or services for the debtor in the
25                 ordinary course of the debtor's business if, and only if, during

26

27       [1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Motion for Order Authorizing the Debtor to Pay Prepetition Wages, Employee Deductions, and Related Relief* [Docket #6] (the "Motion").

28

1    the 12 months preceding that date, at least 75 percent of the
2    amount that the individual or corporation earned by acting as
     an independent contractor in the sale of goods or services was
     earned from the debtor.
3

4    As also noted at the hearing, *Collier on Bankruptcy* explains the application of the

5    provision as follows:

6    The priority may be asserted by any individual who is an
     employee of the debtor. It is not limited to subordinate
7    employees and may be asserted by employees who also happen
     to be officers, directors, stockholders or partners.  An
8    employee seeking a priority for wages or salary must be a
     direct employee of the debtor and have a direct claim against
9    the debtor arising from such employment.  In determining
     whether an individual is an employee of the debtor, the court
10   should look to state law.

11   4 *Collier on Bankruptcy* P. 507.06[3][a].  However, none of the cases cited in the footnotes

12   to this paragraph actually say that the word "individual" should be construed to mean an

13   "employee," exclusively, as distinct from any type of independent contractor or temporary

14   worker hired by a debtor.  The Debtor will address those cases in the order *Collier on*

15   *Bankruptcy* cites them.

16   *In re Jade W. Corp., Inc.*, 53 B.R. 16 (Bankr. D. Or. 1985) addressed the issue of

17   whether an officer or director was entitled to wage priority.  There was no dispute that the

18   officers in question were employees, and no need to address whether the term "individual"

19   extended beyond employees.  The Court held that:

20   11 U.S.C. § 507(a)(3) states that the wage claims of "an
     individual" enjoy a third priority. This change in wording
21   certainly supports the conclusion that a different result follows
     under the 1978 Act than the 1898 Act. According to the plain
22   words in 11 U.S.C. § 507(a)(3), any employee is entitled to a
     wage priority, regardless of the capacity in which he served his
23   employer. *Id*. at 17.

24   *In re Hutchison*, 223 B.R. 586 (Bankr. M.D. Fla. 1998) held that an attorney who

25   represented the debtors in that case before conversion from Chapter 13 to Chapter 7 was

26   not entitled to wage priority.  The Court found that: "The key distinction entitling

27   claimants to priority pursuant to § 507(a)(3) is whether claimants are truly engaged in a

28   master/servant relationship with the Debtor versus those who are engaged in a contractual

1  relationship with the Debtor." *In re Owen*, 324 B.R. 373 (Bankr. N.D. Fla. 2004) involved

2  an identical fact pattern to *In re Hutchinson* and the same result.

3      *In re Alroco, Inc.*, 92 B.R. 523 (Bankr. M.D. Fla. 1988) involved the claim of an

4  agency which provided temporary workers to the Debtor.  It was not entitled to wage

5  priority, because its contract to supply workers was an arms-length agreement between two

6  businesses, no different than any other contract.  The workers in question were not being

7  left unpaid because the agency was required to pay them.

8      *In re Konidaris*, 87 B.R. 846 (Bankr. E.D. Pa. 1988) supports an expansive

9  interpretation of the wage priority provision.  It found that the individual debtor in that

10  case was liable for the claimant's wages, even though he was not technically the claimant's

11  employer at all.  *Id*. at 852 ("Clearly, the Corporation was the actual employer of the

12  Claimant, not the Debtor.")  However, citing in general terms to an expansive definition of

13  "employer" under Pennsylvania law, it allowed the claim, before going on to question its

14  own application of state law at all, hypothesizing that it might be preempted by federal

15  law. *Id*. at 853 ("There is only one difficult issue concerning the application of the Law

16  here, which we believe that the Debtor has waived by not raising it. That is whether the

17  Law has been pre-empted by pertinent federal law and hence is unenforceable…  In any

18  event, but for the presence of the Law, we may well have pierced the Corporation's veil

19  and rendered the Debtor liable on that basis.")

20      *Matter of Dahlman Truck Lines, Inc.*, 59 B.R. 218 (Bankr. W.D. Wis. 1986)

21  presented a similarly inapposite situation akin to *In re Alroco, Inc*.  The claimant was

22  another corporate entity contracting with the debtor at arms-length.  It argued that its

23  employees, i.e. the claimant's employees, were actually employed by the debtor.  The

24  Court ruled that they were not.

25      Finally, *In re Kasson Inc., U.S.A.*, 109 B.R. 352 (Bankr. E.D. Wis. 1989) addressed

26  whether payments to the debtor's milk suppliers could be classified as "wages" under

27  Wisconsin law.  It did not search Wisconsin law for the meaning of employee, it did not

28  equate the word "individual" with the word "employee," and it even questioned whether

1  state law was applicable in determining whether the payments to milk suppliers were

2  wages.  *Id.* at 353 ("it is arguable if state law is controlling on this issue.")

3      Moreover, almost every single one of the cases cited in the aforementioned

4  paragraph in *Collier* pre-dates the changes to the law in 1994.  As further explained in

5  *Collier*:

6      Prior to the Bankruptcy Reform Act of 1994, there was a split
        among the courts as to whether commissions owed to an
7      independent contractor working for the debtor qualified for a
        section 507(a)(4) priority.  The Bankruptcy Reform Act of
8      1994 ended the dispute by creating a new clause (B) to section
        507(a)(4) providing that commissions owed to independent
9      contractors are eligible for priority if certain conditions are
        met. For commissions owed to independent contractors to
10     qualify for priority, the independent contractor must have been
        acting as such for the debtor with regard to the sale of goods or
11     services in the ordinary course of the debtor's business. In
        addition, during the 12 months preceding the earlier of the date
12     of the filing of the petition or the cessation of the debtor's
        business, the independent contractor must have earned from the
13     debtor at least 75 percent of the total amount earned by such
        independent contractor from the sale of goods or services.
14     Commissions owed to independent contractors are also subject
        to the general rules governing priority under section 507(a)(4).
15     They must be earned within the applicable 180-day period n14
        and cannot exceed the maximum dollar limitation.

16

17  4 *Collier on Bankruptcy* P. 507.06[3][b].

18      In 1994, Congress could have changed the wording of Subsection (a)(4)(A) from

19  "individual" to "employee," but declined to.  Rather, it made a very specific change to the

20  law to ensure a broad application of the provision with respect to one particular group of

21  workers, leaving the broad wording of "individual" undisturbed.  While the addition of

22  Subsection (a)(4)(B) did involve a certain degree of superfluity, insofar as "individuals"

23  earning "sales commissions" should already have been covered under Subsection (a)(4)(A)

24  as "individuals" earning "commissions," it runs directly counter to the specific

25  congressional purpose in 1994 of expanding the scope of the wage priority if its addition is

26  now construed as impliedly limiting the general purpose and the general wording of

27  "individual" under Subsection (a)(4)(A).  *Accord Morton v. Mancari*, 417 U.S. 535, 550,

28  94 S. Ct. 2474, 2482, 41 L. Ed. 2d 290 (1974) ("In the absence of some affirmative

showing of an intention to repeal, the only permissible justification for a repeal by

implication is when the earlier and later statutes are irreconcilable.")  In addition, any pre-

1994 case authority construing Subsection (a)(4)(A) broadly to extend to independent

contractors was not overruled by the Bankruptcy Reform Act of 1994.  If anything, it was

endorsed.

The Court would not be breaking new ground in reaching this conclusion, and

recognizing that independent contractors on the Debtor's payroll are "individuals" within

the meaning of Subsection (a)(4)(A).  It would not even be the first within the 9th Circuit to

expressly so hold.  *See e.g. In re Corcoran*, 2010 WL 5207589, at *1 (Bankr. D. Haw.

2010):

> The historical evolution of the statute also shows that Congress
> did not intend to limit priority status to technical "employees."
> Beginning in the early years of the 1898 Bankruptcy Act,
> Congress has steadily broadened the scope of the "wage
> priority" provisions, in part expressly to overrule court
> decisions that independent contractors were not entitled to
> priority.  Recent cases hold that independent contractors can
> assert wage priority claims. (Internal citations omitted).

*See also In re Qualia Clinical Serv., Inc.*, 2009 WL 2513820, at *3 (Bankr. D. Neb.

2009) ("Qualia did not consider the claimants to be employees for its payroll purposes.

Participants filled out federal W–9 tax forms and were issued 1099 forms at the end of

each year reflecting payments made to them… Nevertheless, Qualia needed these people

in order to conduct its business… The context and nature of the subjects' relationship with

Qualia really was that of short-term employees. They had more than a 'mere contractual

relationship' with Qualia"); and *In re Wang Labs., Inc.*, 164 B.R. 404, 408 (Bankr. D.

Mass. 1994) ("I find that, in broadening the class of persons to whom the wage priority

might be applied from 'workmen, servants, clerks, or traveling or city salesmen' to

encompass all natural persons, Congress intended similarly to open the scope of "wages"

to include compensation paid to such persons, whether employees or independent

contractors. The meaning must be derived from the context and not taken either in the

abstract or from another context.")

**B.**    **Even if the Court Does Not Permit the Debtor to Run Payroll for All "Individuals," It Should Nonetheless Permit Immediate Payment to Pau Torruella and Kathleen Lam, Both of Whom Fall Within the Criteria of 11 U.S.C. § 507(a)(4)(B)**

     1.    <u>Pau Torruella</u>

As set forth in the declaration of Mr. Torruella, he is a salesman paid on commission who has earned more than 75% of his income in the past year from sales commissions on behalf of the Debtor. The amount to be paid to Mr. Torruella does not exceed the cap of $12,475.00.

     2.    <u>Kathleen Lam</u>

Kathleen Lam provides graphic design services to the Debtor. She joined the Debtor in September on a four-month contract, works full time for the Debtor, and exclusively for the Debtor, and she is paid on an hourly basis. More than 75% of her income in the past year has been from the Debtor, as she joined the Debtor straight from college. The Debtor intends to convert her to a full-time employee at the expiration of her current contract on December 31, 2015. The amount to be paid to Ms. Lam does not exceed the cap of $12,475.00.

**C.**    **In the Alternative, Kathleen Lam is Entitled to Priority Under 11 U.S.C. § 507(a)(4)(A), as the Debtor's Payroll Obligations with Respect to Her are "Wages" within the Meaning of California Law**

Though not required to be treated as a W-2 "employee" for payroll, tax withholding, or benefits purposes at this time, Ms. Lam nonetheless likely meets several of the various definitions of "employee" under various California statutes, and therefore the *Collier on Bankruptcy* test for whether she is an individual to whom Subsection (a)(4)(A) applies. *See e.g. Cal. Lab. Code* § 3351 ("'Employee' means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed"); Cal. Lab. Code § 2750 ("The contract of employment is a contract by which one, who is called the

1  employer, engages another, who is called the employee, to do something for the benefit of

2  the employer or a third person.")

3      Further, the money owed to Ms. Lam constitutes "wages" within the meaning of

4  California law.  California law defines that term in California Labor Code, § 200:

5      "Wages" includes all amounts for labor performed by
       employees **of every description**, whether the amount is fixed
6      or ascertained by the standard of time, task, piece, commission
       basis, or other method of calculation. (Emphasis added).
7

8      The article referred to (Article 1 of Part 1 of the Labor Code) regulates the payment

9  of wages to temporary workers such as Ms. Lam, among other types of workers (*see e.g.*

10 Cal. Lab. Code, § 201.3).  Indeed, the Debtor would argue that the definition of wages

11 under California law is sufficiently broad that all of the Debtor's independent contractors,

12 not just Ms. Lam, are entitled to priority as a result of it.  If applicable state law governs

13 whether a worker is entitled to priority under Section 507(a)(4)(A), as *Collier* suggests,

14 Ms. Lam is undoubtedly entitled to priority.  Moreover, it should be reiterated that *In re*

15 *Kasson Inc., U.S.A.*, 109 B.R. 352 (Bankr. E.D. Wis. 1989), which Collier cites for the

16 proposition that "[i]n determining whether an individual is an employee of the debtor, the

17 court should look to state law" (4 *Collier on Bankruptcy* P. 507.06[3][a]), did not explore

18 the Wisconsin definition of "employee," it looked to the Wisconsin law definition of

19 "wages."

20     Finally, it should be noted that Ms. Lam's temporary contract is a contract which

21 the Debtor in its business judgment would assume. See Supplemental Declaration of

22 Alexander Eburne filed concurrently herewith.

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28

1

**D.      Conclusion**

2      In light of the foregoing, the Debtor respectfully requests that the Court supplement

3  its prior order granting the Motion, and further approve payment to all individuals, but not

4  corporations, on the Debtor's payroll, or, in the alternative, payment of all pre-petition

5  amounts owed to Pau Torruella and Kathleen Lam.

6  DATED: November 15, 2015          Respectfully submitted,

7                                    WOLF, RIFKIN, SHAPIRO,
8                                    SCHULMAN & RABKIN, LLP

9

10                                   By:   / s / Johnny White
11                                         SIMON ARON
                                           JOHNNY WHITE
12                                   Proposed Attorneys for Debtor, EcoSmart, Inc. dba
13                                   EcoSmart Fire dba Brown Jordan Fires

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF ALEXANDER EBURNE

I, Alexander Eburne, declare as follows:

1.    I am a party in the above-entitled action.  I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true.  If called as a witness, I could and would competently testify to the matters stated herein.

2.    I am the Chief Executive Officer of EcoSmart, Inc., the Chapter 11 debtor and debtor in possession in the above-entitled action bankruptcy proceeding (the "Debtor"), and I have authority to make this declaration on the Debtor's behalf.  I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true.  If called as a witness, I could and would competently testify to the matters stated herein.

3.    Kathleen Lam is currently employed by the Debtor full-time on an hourly basis and on a temporary contract.  Ms. Lam works exclusively for the Debtor.  The Debtor is happy with Ms. Lam's work and intends to recruit her to full time employment at the expiration of her temporary contract.

4.    The Debtor, in its business judgment, would assume Ms. Lam's contract if required to do so.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed November 13, 2015, at Los Angeles, California.

_____
Alexander Eburne

## DECLARATION OF PAU TORRUELLA

I, Pau Torruella, declare as follows:

1.     I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true.  If called as a witness, I could and would competently testify to the matters stated herein.

2.     I act as an independent contractor in the sale of goods and services for the debtor, EcoSmart, Inc. (the "Debtor") in the ordinary course of the Debtor's business.

3.     The sales commissions I am paid by the Debtor are my primary source of income.

4.     From November 8, 2014, through November 7, 2015, more than 75 percent of the amount that I earned by acting as an independent contractor in the sale of goods or services was earned from the Debtor.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed November 12, 2015, at Los Angeles, California.

_____
Pau Toruella

## DECLARATION OF KATHLEEN LAM

I, Kathleen Lam, declare as follows:

1.      I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2.      I am employed to provide graphic design services for the debtor, EcoSmart, Inc. (the "Debtor") in the ordinary course of the Debtor's business on a temporary contract under which I am paid hourly.

3.      My employment with the Debtor is my first full-time employment since graduating from university. The income I earn from the Debtor is my only source of income.

4.      From November 8, 2014, through November 7, 2015, more than 75 percent of what I earned was earned from the Debtor.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed November 13, 2015, at Los Angeles, California.

_____
Kathleen Lam

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

11400 W. Olympic Blvd., 9th Floor, Los Angeles, CA 90064

A true and correct copy of the foregoing document entitled (*specify*): **SUPPLEMENT TO MOTION FOR AN ORDER AUTHORIZING THE DEBTOR TO PAY PRE-PETITION WAGES, EMPLOYEE DEDUCTIONS, AND RELATED RELIEF; DECLARATIONS OF ALEXANDER EBURNE, PAU TORRUELLA, AND KATHLEEN LAM IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **November 15, 2015**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Simon Aron    saron@wrslawyers.com
- Alvin Mar    alvin.mar@usdoj.gov
- Steven M Olson    smo@smolsonlaw.com, jacob.faircloth@smolsonlaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Johnny White    JWhite@wrslawyers.com, aparisi@wrslawyers.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **November 15, 2015**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Via Overnight Mail**
Honorable Robert N. Kwan
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1682 / Courtroom 1675
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 15, 2015 | Johnny White | /s/ Johnny White |
|---|---|---|
| Date | Printed Name | Signature |