FILED & ENTERED

DEC 18 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>EcoSmart, Inc.,<br><br>        Debtor. | Case No. 2:15-bk-27139-RK<br><br>Chapter 11<br><br>**MEMORANDUM DECISION AND FURTHER ORDER ON DEBTOR'S MOTION FOR AN ORDER AUTHORIZING THE DEBTOR TO PAY PRE-PETITION WAGES, EMPLOYEE DEDUCTIONS, AND RELATED RELIEF** |

  Pending before the court is the Motion for an Order Authorizing the Debtor to Pay Pre-Petition Wages, Employee Deductions, and Related Relief ("Motion"). ECF 6. The Motion was filed by Debtor EcoSmart, Inc., on November 9, 2015 after Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C, on November 8, 2015. As a debtor-in-possession, Debtor brings the Motion pursuant to 11 U.S.C. §§ 105(a), 362, 363(b), 507(a), 1107(a) and 1108 and seeks an order authorizing it to immediately pay non-insider employees and independent contractors based on anticipated claims for prepetition wages, salary and commissions, which it says are otherwise entitled to priority unsecured claim status under 11 U.S.C. § 507(a)(4). Motion at 3-5. According to the Motion, as of the petition date, Debtor was a California corporation in the business of designing, manufacturing and selling fireplaces powered by Bioethanol, a renewable energy, which employs 35 full-time and part-time employees, of

1  which 20 are salaried, 11 are individual sales representatives, and four (4) are

2  independent sales representatives that are corporations.  *Id.* at 8 and n. 2; *see also,*

3  Declaration of Alexander Eburne, Motion at 17-20.  The court granted Debtor's application

4  to hear the motion on shortened notice pursuant to Local Bankruptcy Rule 9075-1, and

5  the initial hearing on the instant motion was conducted on November 12, 2015.  Johnny

6  White and Simon Aron, of the law firm of Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP,

7  appeared for Debtor.  Alvin Mar appeared for the United States Trustee.  Alexander

8  Eburne, chief executive officer of Debtor, also attended the hearing.  No other

9  appearances were made.

10  Local Bankruptcy Rule 2081-1, which provides for consideration of motions for

11  emergency or expedited relief in Chapter 11 cases, applies to the Motion.  Rule 2081-

12  1(a)(6) specifically includes motions to pay prepetition payroll and to honor prepetition

13  employment procedures, and with respect to such motions, states:

> The motion must be supported by evidence that establishes: (A) The employees are still employed; (B) The necessity for payment; (C) The benefit of the procedures; (D) The prospect of reorganization; (E) Whether the employees are insiders; (F) Whether the employees' claims are within the limits established by 11 U.S.C. §507; and that (G) The payment will not render the estate administratively insolvent.

18  Local Bankruptcy Rule 2081-1(a)(6).

19  At the initial hearing on the Motion on November 12, 2015, the court considered

20  whether the Motion complied with the standard of Rule 2081-1(a)(6).  Based on the

21  evidence submitted in support of the Motion and the offers of proof made by counsel for

22  Debtor at the initial hearing on November 12, 2015, the court partially granted the Motion

23  as to the claims of creditors listed as employees on Debtor's payroll summary attached as

24  Exhibit B to the Motion and reserved ruling on the Motion as to claims of creditors listed

25  as independent contractors (i.e., independent sales representatives) on this document.

26  The payroll summary indicates that 20 workers are listed as "employees" ("Department

27  200") whose wages or salaries are subjected to deduction of federal and state income tax

28

2

withholding and employment taxes and that 15 workers are listed as "independent sales representatives" ("Department 300") whose compensation is not subjected to deduction of federal and state income tax withholding and employment taxes and are issued IRS Forms 1099, Miscellaneous Compensation Statements. Motion, Exhibit B. In this regard, the title of the Motion is somewhat a misnomer because Debtor also seeks authorization to pay prepetition independent contractor compensation claims and not just the prepetition employee wage and employee deduction claims referenced in the title of the Motion.

At the hearing on November 12, 2015, the court determined that as to the claims of the 20 workers listed as employees on Debtor's payroll summary, the Motion was supported by adequate evidence required under Rule 2081-1(a)(6) that established: (A) The employees are still employed; (B) The necessity for payment; (C) The benefit of the procedures; (D) The prospect of reorganization; (E) Whether the employees are insiders; (F) Whether the employees' claims are within the limits established by 11 U.S.C. § 507; and that (G) The payment will not render the estate administratively insolvent. With respect to item (F) of Rule 2081-1(a)(6), the court relied upon 11 U.S.C. § 507(a)(4) in determining that the employees' claims were within the limits established by 11 U.S.C. § 507 to grant the Motion.

11 U.S.C. § 507(a)(4) states:

(a) The following expenses and claims have priority in the following order:

****

(4) Fourth, allowed unsecured claims, but only to the extent of $12,475 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for---

(A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or

(B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at

> least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor.

Section 507(a)(4) gives priority in distribution to claims of employees of the debtor for prepetition wages, salaries and commissions under subsection (a)(4)(A), and claims of certain independent contractors for prepetition commissions earned from the debtor under subsection (a)(4)(B). 11 U.S.C. § 507(a)(4); *see also,* 4 Resnick and Sommer, *Collier on Bankruptcy,* ¶507.06[3][b] at 507-29 – 507-30 (16th ed. 2015). As to the 20 employees, the court was satisfied that the evidence showed that the claims were for wages or salaries qualifying for priority claim treatment under 11 U.S.C. § 507(a)(4)(A).

At the hearing on November 12, 2015, the court determined that as to the claims of the 15 workers listed on Debtor's payroll summary as independent sales representatives or independent contractors, the Motion was not supported by adequate evidence required under Rule 2081-1(a)(6) that established: (A) The employees are still employed; (B) The necessity for payment; (C) The benefit of the procedures; (D) The prospect of reorganization; (E) Whether the employees are insiders; (F) Whether the employees' claims are within the limits established by 11 U.S.C. § 507; and that (G) The payment will not render the estate administratively insolvent. With respect to item (F) of Rule 2081-1(a)(6), the court relied upon 11 U.S.C. § 507(a)(4) in deferring its ruling regarding whether the independent sales representatives' claims were within the limits established by 11 U.S.C. § 507 because the evidence was insufficient to grant the motion.

Citing the statutory language of 11 U.S.C. § 507(a)(4)(A) and (B), and the commentary on these provisions in *Collier on Bankruptcy,* the court ruled at the hearing on November 12, 2015 that the evidence was insufficient to show that the Motion should be granted pursuant to Rule 2081-1(a)(6) as to the claims of the independent sales representatives, or independent contractors. The court ruled that the claims of 15 independent contractors were not supported by adequate evidence that the claims met the requirements of 11 U.S.C. § 507(a)(4)(B), specifically pertaining to independent

4

1 contractors, and that such claims were not entitled to priority claim treatment under 11
2 U.S.C. § 507(a)(4)(A) for the wages, salaries and commissions of employees in order to
3 grant the Motion pursuant to Rule 2081-1(a)(6) as to the independent contractors.  In so
4 ruling, the court rejected Debtor's argument that the claims of the independent sales
5 representatives and independent contractors fall under the rubric of commissions
6 pursuant to 11 U.S.C. § 507(a)(4)(A) because there is no restriction in the express
7 language of § 507(a)(4)(A) to employees of the debtor.  In its order granting partial relief
8 on the Motion after the hearing on November 12, 2015, the court stated that the claims of
9 the 20 employees may be paid immediately, but that it was reserving a ruling as to the
10 claims of the 15 independent contractors until a further hearing on November 17, 2015,
11 and allowing Debtor to submit supplemental evidence showing that the claims were
12 entitled to priority treatment under 11 U.S.C. § 507(a)(4)(B).  ECF 19 at 2.
13         On November 15, 2015, Debtor filed a supplement to the Motion, arguing that
14 payment of prepetition payroll obligations to all "individuals," whether employees or
15 independent contractors, should be authorized under the plain language of 11 U.S.C. §
16 507(a)(4)(A) and applicable case authority.  Supplement to Motion, ECF 25 at 2-6.  In the
17 Supplement to Motion, Debtor also submitted declarations of two independent
18 contractors, Pau Torruella and Kathleen Lam, and of its chief executive officer, Mr.
19 Eburne, arguing that their claims for prepetition commissions should be paid under either
20 11 U.S.C. § 507(a)(4)(A) or (B).  *Id.* at 7-12.
21         Before the scheduled further hearing on November 17, 2015, the court reviewed
22 Debtor's Supplement to Motion and determined that based on the supplemental evidence
23 submitted in support of payment of the claims of Mr. Torruella and Ms. Lam for prepetition
24 commissions that Debtor made a sufficient evidentiary showing that their claims qualified
25 for priority in meeting the requirements of independent contractor claims under 11 U.S.C.
26 § 507(a)(4)(B), specifically, that the sales commissions of these independent contractors
27 were earned in the sale of goods or services for the debtor in the ordinary course of
28

1  Debtor's business within 180 days of the petition date and that during the 12 month period
2  preceding the petition date, at least 75 percent of their earnings as an independent
3  contractor in the sale of goods or services was earned from Debtor.  Supplement to
4  Motion at 10-12; Supplemental Order on Debtor's Motion for Order to Pay Pre-Petition
5  Wages, Employee Deductions and Related Relief, ECF 26 at 3.
6        As to Debtor's statutory construction argument in the Supplement to Motion, the
7  court, having only reviewed the Supplement on November 16, 2015, which was only the
8  day before the scheduled further hearing on November 17, 2015, decided to continue the
9  November 17, 2015 hearing in order to read and analyze the case authorities cited by
10 Debtor in the Supplement, which included 10 published and unpublished case opinions,
11 most of which were not cited in prior briefing (the Supplement to Motion was filed at 10:30
12 p.m. on the evening of Sunday November 15, 2015, and the earliest opportunity for the
13 court to review it was the next business day, Monday November 16, 2015, the day before
14 the scheduled further hearing on Tuesday November 17, 2015.).  After its initial review of
15 the Supplement to Motion, the court entered a further order on the Motion, partially
16 granting the Motion as to the claims of the two independent contractors, Mr. Torruella and
17 Ms. Lam, and continuing the further hearing on the Motion from November 17, 2015 to
18 November 25, 2015 in order for the court to research and consider the Supplement to
19 Motion.  *Id.*
20       On November 25, 2015, the court conducted the rescheduled further hearing on
21 the Motion after considering the Supplement to Motion and hearing further oral argument.
22 The court notes that Debtor did not submit further evidence to show that the claims of the
23 independent contractors satisfied the requirements of 11 U.S.C. § 507(a)(4)(B).  At the
24 hearing on November 25, 2015, Debtor renewed its argument that the Motion should be
25 granted to allow the immediate payment of the claims of the independent contractors
26 because payment of prepetition payroll obligations to all "individuals" should be
27 authorized under the plain language of 11 U.S.C. § 507(a)(4)(A) and applicable case
28

authority. In support of this argument, Debtor cited the following cases: *In re Jade West Corp., Inc.,* 53 B.R. 16 (Bankr. D. Or. 1985); *In re Hutchison,* 223 B.R. 586 (Bankr. M.D. Fla. 1998); *In re Owen,* 324 B.R. 373 (Bankr. N.D. Fla. 2004); *In re Alroco, Inc.* 92 B.R. 523 (Bankr. M.D. Fla. 1988); *In re Konidaris,* 87 B.R. 846 (Bankr. E.D. Pa. 1988); *Matter of Dahlman Truck Lines, Inc.,* 59 B.R. 218 (Bankr. W.D. Wis. 1986); *In re Kasson, Inc., U.S.A.,* 109 B.R. 352 (Bankr. E.D. Wis. 1989); *Morton v. Mancari,* 417 U.S. 535 (1974); *In re Corcoran,* 2010 WL 5207589 (Bankr. D. Haw. 2010); *In re Qualia Clinical Service, Inc.,* 2009 WL 2513820 (Bankr. D. Neb. 2009); *In re Wang Laboratories, Inc.,* 164 B.R. 404 (Bankr. D. Mass. 1994). Supplement to Motion at 3-6.

As discussed herein, the court does not find Debtor's argument persuasive and finds that Debtor's argument is not supported by applicable statutory and case law. First, the court observes that whether some prepetition claims may be paid before other prepetition claims are paid through a confirmed plan of reorganization in a Chapter 11 bankruptcy case raises a general philosophical question of whether it is permissible under the Bankruptcy Code to pay prepetition claims of "critical vendors" before other prepetition claims are paid. *Matter of B & W Enterprises, Inc.,* 713 F.2d 534, 535-538 (9th Cir. 1983)(affirming the bankruptcy court's avoidance of certain payments of prepetition claims made by a debtor-in-possession in Chapter 11 proceedings before conversion to Chapter 7, rejecting the defenses of the paid creditors that the payment was proper under the so-called "necessity of payment" rule, stating "[a]bsent compelling reasons, we deem it unwise to tamper with the statutory priority scheme devised by Congress in the 1978 Act [the Bankruptcy Code]. *See* 11 U.S.C. § 507.", and declining to extend any such rule outside railroad reorganization cases); *In re Kmart Corp.,* 359 F.3d 866, 871-874 (7th Cir. 2004)(affirming the district court's reversal of a bankruptcy court's "critical vendor" payment order, stating that "[a] 'doctrine of necessity' is a fancy name for a power to depart from the [Bankruptcy] Code."); *see also, In re Adams Apple, Inc.,* 829 F.2d 1484, 1486, 1490 (9th Cir. 1987)(appeal of creditors of the bankruptcy court's authorization

7

without creditor approval of a financing arrangement that includes a cross-collateralization provision dismissed as moot under 11 U.S.C. § 364(e), but noting in dicta that "[c]ases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation, in such contexts as (i) pre-petition wages to key employees; (ii) hospital malpractice premiums incurred prior to filing; (iii) debts to providers of unique and irreplaceable supplies; and (iv) peripheral benefits under labor contracts."), *citing,* Ordin, *Case Comment,* In re Texlon Corporation, *596 F.2d 1092 (2d Cir. 1979); Finality of Order of Bankruptcy Court,* 54 Amer. Bankr. L.J. 173, 177 (1980).  The answer is generally no on grounds of lack of authority under the Bankruptcy Code to pay claims outside the statutory scheme for payment of prepetition claims.  *Matter of B & W Enterprises, Inc.; In re Kmart Corp, supra.*

The prepetition claims of employees and certain independent contractors are still prepetition claims of creditors, though they may be accorded priority status in payment under the Bankruptcy Code through 11 U.S.C. § 507(a)(4), but 11 U.S.C. § 507(a)(4) only accords priority in payment to such claims when a distribution on claims is authorized, which in a Chapter 11 bankruptcy case is pursuant to a confirmed reorganization plan under 11 U.S.C. § 1129.  *See, e.g., In re Air Beds, Inc.,* 92 B.R. 419, 422-424 (9th Cir. BAP 1988)("The general rule is that a distribution on pre-petition debt in a Chapter 11 case should not take place except pursuant to a confirmed plan of reorganization, absent extraordinary circumstances."), *citing inter alia,* Fed. R. Bankr. P. 3021 (stating generally that after plan confirmation, distributions shall be made to creditors holding allowed claims, interest holders whose interests have not been disallowed and indentured trustees whose claims have been allowed).  There is nothing in 11 U.S.C. § 507(a)(4) by itself which authorizes payment of prepetition wage and commission claims in advance of other prepetition claims.  There is some case law and some authority in the court's rules in Rule 2081-1(a)(6), which allows immediate payment of claims, often on first day motions, based on the recognition of the critical need to pay prepetition wage and

commission claims to employees and specified independent contractors so that they continue to work for the debtor and render services to the debtor to help it continue operations as a going concern and to reorganize in a Chapter 11 bankruptcy case. However, the courts which have adopted this practice in their decisions or in their rules have limited the practice to claims entitled to priority in distribution pursuant to the bankruptcy court's equitable powers under 11 U.S.C. § 105(a). *See, e.g.,* Local Bankruptcy Rule 2081-1(a)(6); 2 March, Ahart and Shapiro, *California Practice Guide: Bankruptcy,* ¶ 11:386 at 11-45 (2014)("Most courts allow payment of prepetition employee wages up to the priority amount under the '*necessity of payment' doctrine,* which permits immediate payment of creditors who will not supply services or material essential to the conduct of the business until their prereorganization claims are paid.")(emphasis in original), *citing, In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175-176 (Bankr. S.D.N.Y. 1989) and *In re Gulf Air, Inc.,* 112 B.R. 152, 153-154 (Bankr. W.D. La. 1989). However, the cited statutory justification for such practice is 11 U.S.C. § 105(a) of the Bankruptcy Code, which may be on shaky ground in light of recent Supreme Court precedent, such as *Law v. Siegel*, 134 S.Ct. 1188 (2014), stating that 11 U.S.C. § 105(a) is not a broad mandate to depart from contrary express mandates in the Bankruptcy Code. *Id.* at 1194; *see also, Matter of B & W Enterprises, Inc., supra; In re Kmart Corp., supra*. Against this legal backdrop, the court considers Debtor's request for immediate payment of claims of the independent contractors where Debtor has not even demonstrated that such claims are entitled to priority under the Bankruptcy Code, namely, 11 U.S.C. § 507(a)(4).

      The cases cited by Debtor in its Supplement to Motion are generally inapposite since most of the cases do not raise the issue of whether claims of independent contractors for commissions from a debtor are entitled to priority under 11 U.S.C. § 507(a)(4). However, several of Debtor's cited cases are on point regarding the issue of priority claim status of claims of independent contractors, i.e., *In re Wang Labs, Inc., supra; In re Corcoran, supra;* and *In re Qualia Clinical Service, Inc., supra.*

9

The first case of *In re Wang Labs, Inc., supra,* was superseded by the Bankruptcy Reform Act of 1994, which added 11 U.S.C. § 507(a)(4)(B) to expressly permit priority claim treatment of claims of certain independent contractors of a debtor under 11 U.S.C. § 507(a)(4) under certain conditions. As *Collier on Bankruptcy* explains:

> Prior to the Bankruptcy Reform Act of 1994, there was a split among the courts as to whether commissions owed to an independent contractor working for the debtor qualified for a section 507(a)(4) priority. The Bankruptcy Reform Act of 1994 ended the dispute by creating a new clause (B) to section 507(a)(4) providing that commissions owed to independent contractors are eligible for priority if certain conditions are met. For commissions owed to independent contractors to qualify for priority, the independent contractor must have been acting as such for the debtor with regard to the sale of goods or services in the ordinary course of the debtor's business. In addition, during the 12 months preceding the earlier of the date of the filing of the petition or the cessation of the debtor's business, the independent contractor must have earned from the debtor at least 75 percent of the total amount earned by such independent contractor from the sale of goods or services.

4 Resnick and Sommer, *Collier on Bankruptcy,* ¶507.06[3][c] at 507-29 – 507-30 and n. 3, *citing, In re Wang Lab, Inc.,* 164 B.R. 404 (Bankr. D. Mass. 1994) (commissions owed to independent contractors qualified for priority); *In re Lynnwear Corp.,* 28 B.R. 532 (Bankr. S.D.N.Y. 1983) (same); *In re American Shelter Systems, Inc.,* 40 B.R. 793 (Bankr. W.D. La. 1984)(commissions owed to independent contractors did not qualify for priority); *In re St. Joseph's Hosp.,* 126 B.R. 37 (Bankr. E.D. Pa. 1991)(same).

The legislative history of the Bankruptcy Reform Act of 1994 demonstrates that in enacting 11 U.S.C. § 507(a)(4)(B), Congress intended to resolve the dispute in the case law over whether claims of independent contractors were entitled to priority and to provide for such priority claim status subject to certain conditions as indicated by the floor statements of the bill's sponsor, Representative Jack Brooks, chairman of the House Judiciary Committee, the committee having jurisdiction over the bill:

> Section 207.  Priority for independent sales representatives
>
> This section clarifies that independent sales representatives of a bankrupt debtor are entitled to the same priority as the employees of the debtor codifying In re Wang Laboratories, Inc., 164 B.R. 404 (Bankr. D. Mass. 1994). This section modifies section 507 of title 11 to include such

> representatives in the section's third priority as employees for purposes of claims of a bankruptcy debtor. The section specifies that in order to be treated as an employee for the purposes of priority, at least 75 percent of the income of the independent sales representative must have been earned as an independent contracting entity from the bankrupt debtor.

Floor Statements of Rep. Jack Brooks, H.R. 5116, enacted as the Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, 103rd Cong., 2nd Sess., Cong. Rec. H 10767 (October 4, 1994).

Regarding this legislative history, Debtor argues as follows:

> In 1994, Congress could have changed the wording of Subsection (a)(4)(A) from "individual" to "employee," but declined to. Rather, it made a very specific change to the law to ensure that a broad application of the provision with respect to one particular group of workers, leaving the broad wording of "individual" undisturbed. While the addition of Subsection (a)(4)(B) did involve a certain degree of superfluity, insofar as "individuals" earning "sales commissions" should already been covered under Subsection (a)(4)(A) as "individuals" earning "commissions," it runs directly counter to the specific congressional purpose in 1994 of expanding the scope of the wage priority if its addition is now construed as impliedly limiting the general purpose and the general wording of "individual" under Subsection (a)(4)(A). *Accord Morton v. Mancari,* 417 U.S. 535, 550, 94 S. Ct. 2474, 2482, 41 L. Ed. 2d 290 ("In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable."). In addition, any pre-1994 case authority construing Subsection (a)(4)(A) broadly to extend to independent contractors was not overruled by the Bankruptcy Reform Act of 1994. If anything, it was endorsed.

Supplement to Motion at 6.

The court disagrees with Debtor's analysis for several reasons. First, while 11 U.S.C. § 507(a)(4) refers to "individuals," this was a limiting term to exclude artificial entities, and its pre-1994 language referring to wages, salaries and commissions, including vacation, severance, and sick leave earned by an individual contain terms generally applicable to employees only. The only possible exception is the term "commissions," which may be earned by an employee individual and an independent contractor individual, as well as an independent contractor who is not an individual. All of these terms, except commissions, could only refer to compensation of an employee. Wages and salaries are regular compensation for an employee, and vacation, severance and sick leave are fringe benefits for employees. Thus, it appears to this court that

11

Congress, in enacting 11 U.S.C. § 507(a)(3), later renumbered (a)(4), was referring to claims for employee compensation, but the addition of commissions which may be earned by both employees and independent contractors made the provision ambiguous, leading to a conflict in the case law as recognized in the legislative history of the Bankruptcy Reform Act of 1994 and by *Collier on Bankruptcy*.  In enacting new subsection 507(a)(4)(B), Congress intended to resolve the case law conflict by expressly providing for independent contractors under limited conditions.  That is, under 11 U.S.C. § 507(a)(4)(B), priority status of prepetition claims of independent contractors would be recognized if the claims were for goods or services earned by the contractor in the ordinary course of the debtor's business so long as at least 75 percent of the earnings of the independent contractor were earned from the debtor during the 12-month period before the petition date.  If this standard was not met, there was no priority status for the claim of an independent contractor as recognized by the legislative history of the Bankruptcy Reform Act of 1994 in Representative Brooks's floor statements.

      Debtor argues that Congress could have changed the wording of 11 U.S.C. § 507(a)(4) from "individual" to "employee" to support the court's interpretation of the Bankruptcy Reform Act of 1994 that 11 U.S.C. § 507(a)(4) is limited to employees and does not apply to independent contractors.  As Debtor reasons, the prepetition claims for independent contractors as "individuals" earning "commissions" were already covered by 11 U.S.C § 507(a)(4) as being entitled to priority status, but Congress just wanted to ensure that a broad application of the provision applies to one particular group of workers, that is, independent sales representatives who provided goods or services in the ordinary course of business of the debtor and whose earnings in the 12 months before the petition date were at least 75 percent from the debtor.  Debtor's interpretation of the Bankruptcy Reform Act of 1994 is not supported by the legislative history, nor does it make sense. First, if independent contractors were already covered by 11 U.S.C. § 507(a)(4) and Congress wanted to cover certain workers, it need not have added 11 U.S.C. §

507(a)(4)(B) and could have just added language to expressly include independent contractors. Second, Debtor's interpretation of 11 U.S.C. § 507(a)(4)(B) renders it superfluous as Debtor itself recognizes. *See* Scalia and Garner, *Reading Law: The Interpretation of Legal Texts* at 174-179 (2012). If claims for commissions of independent contractors were already entitled to priority under 11 U.S.C. § 507(a)(4) through 11 U.S.C. § 507(a)(4)(A), there is no need for 11 U.S.C. § 507(a)(4)(B). Debtor has no logical explanation for the restrictions on priority status for independent contractor commission claims because under Debtor's view, independent contractor claims that flunk the 11 U.S.C. § 507(a)(4)(B) test are always entitled to priority status under 11 U.S.C. § 507(a)(4)(A). Thus, under Debtor's interpretation, only claims of independent contractors for unpaid prepetition sales commissions who earned at least 75 percent of their earnings from the debtor for goods or services during the 12 month period before the petition date qualify for priority under 11 U.S.C. § 507(a)(4)(B), and those that do not meet this standard qualify for priority under the alternative provision of 11 U.S.C. § 507(a)(4)(A) since all commissions earned by individual independent contractors qualify for priority status under that provision, which is absurd since this would render the 11 U.S.C. § 507(a)(4)(B) meaningless. *See, e.g.*, *Rake v. Wade,* 508 U.S. 464, 471 (1993) ("To avoid deny[ing] effect to a part of a statute we accord significance and effect . . . to every word.") (internal citations and quotations omitted); *Hoffman v. Connecticut Department of Income Maintenance*, 492 U.S. 96, 103 (1989) ("It is our duty to give effect, if possible, to every clause and word of a statute . . . .") (internal citations and quotations omitted); *United States v. Fisher*, 6 U.S. (2 Cranch) 358, 400 (1805) (stating "if the literal expressions of the law would lead to absurd, unjustified, inconvenient consequences, such a construction should be given as to avoid such consequences, if, from the whole purview of the law, and giving effect to the words used, it may fairly be done.").

Aside from being inconsistent with the canon of statutory interpretation that the courts should give meaning to every word in a statute and avoid interpretations that

13

1 render statutory language superfluous, Debtor's interpretation also runs afoul of the
2 canon of statutory interpretation that the specific overrides the general. *See, e.g.*, *Law v.*
3 *Siegel*, 134 S.Ct. at 1194 ("a statute's general permission to take actions of a certain type
4 must yield to a specific prohibition found elsewhere."); *RadLAX Gateway Hotel, LLC v.*
5 *Amalgamated Bank*, 132 S.Ct. 2065, 2071 (2012) ("the [general/specific] canon has full
6 application as well to statutes . . . in which a general authorization and a more limited,
7 specific authorization exist side-by-side.  There the canon avoids not contradiction but the
8 superfluity of a specific provision that is swallowed by the general one, violat[ing] the
9 cardinal rule that, if possible, effect shall be given to every clause and part of a statute.")
10 (internal citation and quotations omitted); *Morton v. Mancari,* 417 U.S. 535, 550-551
11 (1974) ("Where there is no clear intention otherwise, a specific statute will not be
12 controlled or nullified by a general one, regardless of the priority of enactment."); *see also,*
13 Scalia and Garner, *Reading Law: The Interpretation of Legal Texts* at 183-188.  If 11
14 U.S.C. § 507(a)(4)(A) states the general rule as to "individuals" as Debtor asserts, then
15 the general rule should not override the asserted "specific" rule as to independent sales
16 representatives, which would be the result of Debtor's interpretation.

17       Debtor's reliance on the unpublished opinion of the bankruptcy court in *Corcoran* is
18 misplaced because the court in that case did not examine the legislative history of the
19 Bankruptcy Reform Act of 1994, amending 11 U.S.C. § 507(a)(4), and the canons of
20 statutory interpretation as discussed herein, and thus, the court does not follow *Corcoran*,
21 which does not have precedential effect here.

22       Debtor's reliance on the unpublished opinion of the bankruptcy court in *Qualia*
23 *Clinical Service, Inc.,* is also misplaced because the court in that case interpreted
24 Nebraska law of agency and employment, which is not applicable to this case involving
25 Debtor operating in California and that court, relying upon *Wang Labs,* also as in
26 *Corcoran,* did not examine the legislative history of the Bankruptcy Reform Act of 1994,
27 amending 11 U.S.C. § 507(a)(4), and the canons of statutory interpretation as discussed
28

14

Case 2:15-bk-27139-RK    Doc 52    Filed 12/18/15    Entered 12/18/15 10:23:50    Desc
Main Document    Page 15 of 18

herein. Therefore, the court does not follow *Qualia Clinical Service, Inc.,* which does not have precedential effect here.

As a factual matter, Debtor treated its independent contractors as Form 1099 workers, referring to IRS Forms 1099-MISC, Miscellaneous Income Statements, given to independent contractors to report their compensation from services for Debtor to the Internal Revenue Service for federal income and employment tax purposes as opposed to IRS Forms W-2, Wage and Tax Statements, issued to workers treated as employees for federal income and employment tax purposes. *See* 26 U.S.C. §§ 6051 and 6041A; IRS Publication 15 (Circular E), *Employer's Tax* Guide (2015)(IRS publications may be viewed online on the IRS's website, www.irs.gov); IRS Publication 1779, *Independent Contractor or Employee* (2012). An employer is required to deduct, withhold and pay over federal income and employment taxes from the wages of its employees, but no deductions are made from the compensation paid to independent contractors. 26 U.S.C. §§ 3101 *et seq.,* 3401 *et seq.* and 3501 *et seq.; see also,* IRS Publication 15 (Circular E), *Employer's Tax* Guide (2015); IRS Publication 1779, *Independent Contractor or Employee* (2012). Thus, the court determines that it would be inconsistent for Debtor to now treat its independent contractors as employees for purposes of 11 U.S.C. § 507(a)(4), having not treated them as employees for federal income and employment tax purposes. There is insufficient evidence on this record to consider the independent contractors as "employees" under California law based on common law factors with control over details of work as the primary factor. *See* 3 Witkin, *Summary of California Law,* Agency and Employment, § 23 at 62-64 (2005 and 2015 Supp.), *citing inter alia, S.G. Borello & Sons v. Department of Industrial Relations,* 48 Cal.3d 341, 350-353 (1989) and *Restatement (Second) of Agency,* § 220(2)(a)(1958); *see also, Restatement (Third) of Agency,* § 7.07(a)(3)(2006).

The evidence on this record indicates that these workers were independent contractors who would have to meet the requirements of 11 U.S.C. § 507(a)(4)(B) to be

15

considered priority claimants.  Other than for the claims of Mr. Torruella and Ms. Lam for prepetition commissions which Debtor made a sufficient evidentiary showing that their claims qualified for priority in meeting the requirements of independent contractor claims under 11 U.S.C. § 507(a)(4)(B), specifically, that the sales commissions of these independent contractors were earned in the sale of goods or services for the debtor in the ordinary course of Debtor's business within 180 days of the petition date and that during the 12 month period preceding the petition date, at least 75 percent of their earnings as an independent contractor in the sale of goods or services was earned from Debtor, Debtor has not made a sufficient evidentiary showing that the claims of the other independent contractors met this standard.

In enacting 11 U.S.C. § 507(a)(4)(B) in 1994, Congress was aware of the split case law on whether prepetition claims of independent contractors for commissions were entitled to priority under the language of 11 U.S.C. § 507(a)(4) and resolved the conflict by clarifying what the law should be in expressly recognizing such claims as priority claims only under certain conditions.  If Congress meant to clarify the law resolving the case law split in recognizing that all prepetition claims of independent contractors for commissions were entitled to priority claim status, it could have and would have done so.  Congress did something else, which meant that it did not intend as Debtor argues.  Accordingly, the court determines that under 11 U.S.C. § 507(a)(4), prepetition claims of independent contractor individuals are not entitled to priority claim status unless they meet the standards of 11 U.S.C. § 507(a)(4)(B) as the court has previously indicated.  In this regard, the court would allow payment of prepetition claims of independent contractor individuals if their claims met the standards of 11 U.S.C. § 507(a)(4)(B), even though the court's local rule, Local Bankruptcy Rule 2081-1(a)(6), only authorizes immediate payment of prepetition wage claims of employees covered under 11 U.S.C. § 507(a)(4)(A) since the rationale for payment of these workers is essentially the same, the statutory recognition of priority status of claims of such workers under 11 U.S.C. § 507(a)(4) and

the case law and rule recognition of a necessity to retain the services of workers to keep a reorganizing debtor business operating.

This brings back the first issue raised by the court of whether prepetition claims of Debtor's employees and independent contractors for wages, salaries and commissions may be paid immediately as "critical vendors" in advance of general distributions on prepetition claims of other creditors. The court recognizes that the case law, including circuit authority, is that such payment is generally impermissible based on the so-called "doctrine of necessity." However, a number of lower courts, including this court, recognize that the critical need of Chapter 11 business bankruptcy debtors to retain their workers who might otherwise leave if they were not paid their prepetition wage, salary and commission claims immediately and have justified an exception from the general principle of not allowing advance payment of prepetition claims of so-called "critical vendors" because the Bankruptcy Code confers priority claim status on such claims and would generally have to be paid anyway. However, absent the priority status of claims, the courts have not seen justification to allow payment of prepetition claims of so-called "critical vendors," and this court will follow such examples and require Debtor to demonstrate that the priority status of wage, salary and commission claims of its employees and independent contractors under 11 U.S.C. § 507(a)(4)(A) and (B) to warrant immediate payment in advance of general distribution on prepetition claims. Otherwise, under Debtor's interpretation of the Bankruptcy Code, any prepetition individual creditor is entitled to immediate payment on his or her claim as a priority claim on any contract with the debtor, and such sweeping interpretation is inconsistent with the narrow interpretation given the so-called "doctrine of necessity" in such circuit precedent as *B & W Enterprises* and *Kmart Corp.* discussed above.

Having partially granted the Motion to allow immediate payment of prepetition priority claims of Debtor's employees (Department 200) and of independent contractors Torruella and Lam by prior orders, the court specifically denies the Motion as to the

request for authorization of immediate payment of the prepetition commission claims of other independent contractors (Department 300) not entitled to priority under 11 U.S.C. § 507(a)(4) for the reasons stated herein.  To the extent that Debtor seeks an order to authorize it "to continue to honor existing Employee practices, programs and policies" postpetition and to "continue to pay [its Payroll Administration Obligations] in the ordinary course of business as they come due after the Petition Date" as requested in the Motion at 4-5, the court denies such relief without prejudice because the Motion does not specifically describe such practices and procedures in the Motion in order for the court to meaningfully review such practices and procedures in order to make a ruling.

To the extent that the court has not granted relief on the Motion for an Order Authorizing the Debtor to Pay Pre-Petition Wages, Employee Deductions, and Related Relief in its prior orders, it denies the Motion as set forth above.

IT IS SO ORDERED.

###

Date: December 18, 2015

_____
Robert Kwan
United States Bankruptcy Judge